UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRUSTEES OF THE 1199 SEIU HEALTH
CARE EMPLOYEES PENSION FUND,

                              Plaintiffs,

               - against -

TRAYMORE CHEMISTS, INC.,

                          Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 CV 4070 (MKB)

On July 17, 2013, the Trustees of the 1199 SEIU Health Care Employees Pension Fund
(the "Fund" or "plaintiffs") commenced this action against Traymore Chemists, Inc. ("Traymore"
or "defendant"), alleging violations of the Employee Retirement Income Security Act, 29 U.S.C.
§§ 1001 et seq. ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of
1980, and Section 301 of the Labor Management Relations Act of 1948 ("LMRA"), 29 U.S.C. §
185. (See Compl.[1] ¶¶ 1-4).

     Despite proper service on October 15, 2013, defendant failed to answer or otherwise
respond to the Complaint. On December 6, 2013, plaintiff requested a Certificate of Default and
the Clerk of Court entered a notation of default. Thereafter, on February 19, 2014, plaintiffs filed
a motion for default judgment. On April 8, 2014, the Honorable Margo K. Brodie referred
plaintiffs' motion to the undersigned to conduct an inquest and to issue a Report and
Recommendation. An inquest was held before this Court on June 5, 2014; defendant failed to

---

[1]Citations to "Compl." refer to the Complaint filed on July 17, 2013.

appear.

For the reasons set forth below, the Court respectfully recommends that plaintiff's motion

for default judgment be granted and that damages be awarded in the amount of $37,567.86.

BACKGROUND

The Fund is a multi-employer employee pension plan within the meaning of sections 3(3)

and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37), established and maintained for the

purpose of providing pension benefits to eligible employees of contributing employers. (Id. ¶ 3).

The Fund is established pursuant to collective bargaining agreements between plaintiffs and

various employers, including defendant Traymore. (Id.)  The Fund is administered at 330 West

42nd Street, New York, New York 10036. (Id.)

Plaintiffs, as Trustees of the Fund, are fiduciaries of the Fund within the meaning of

Section 3(21) of ERISA, 29 U.S.C. § 1002(21). (Id. ¶ 4).  The Trustees bring this action on

behalf of the Fund and its participants and beneficiaries pursuant to Sections 502(a)(3) and 515

of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, Section 4301 of the Multiemployer Pension Plan

Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1451, and Section 301 of the LMRA, 29

U.S.C. § 185. (Id.)

Defendant Traymore is alleged to be a registered New York corporation doing business in

New York, whose principal place of business is 110-80 Queens Boulevard, Forest Hills, New

York. (Id. ¶ 5).  Pursuant to a collective bargaining agreement (the "CBA") entered into between

Traymore and the Local 1199 Drug, Hospital, and Health Care Employees Union (the "Union"),

defendant became a participating employer in the Fund, and was obligated to make contributions

2

for its employees pursuant to the CBA and ERISA.  (Id. ¶ 8).

The Complaint alleges that on or around February 28, 2011, defendant completely withdrew from participating in the Fund, within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1383.  (Id. ¶ 10).  Plaintiffs allege that as a result of this withdrawal, defendant is obligated to pay withdrawal liability pursuant to Section 4201(a) of ERISA, 29 U.S.C. § 1381. (Id. ¶ 21).  On August 13, 2012, plaintiffs sent an assessment letter though their attorneys advising defendant that it owed withdrawal liability in the amount of $26,688.00, and that it was required to commence making quarterly payments to the Fund in the amount of $1,376.00, with one final payment of $212.00, in accordance with Section 4219(c)(2) of ERISA, 29 U.S.C. § 1399(c)(2), and the Fund's Withdrawal Liability Policy.  (Id. ¶¶ 11-12; Mem.[2] at 4, Ex. B[3]).  The letter further indicated that the first quarterly payment was due on October 12, 2012.  (Id. at 4, Ex. B).  Defendant was warned that failure to pay as required would constitute a default, entitling the Fund to immediate payment of the full amount owed.  (Id. at 4, Ex. B).

Plaintiffs allege that defendant failed to make the first withdrawal payment due October 12, 2012.  By letter dated December 21, 2012, the Fund notified defendant that it was in default and had sixty (60) days to cure the default.  (Id., Ex. D).  Plaintiffs allege that despite defendant's clear obligations under ERISA, defendant has failed to make any payments toward its withdrawal liability.  Accordingly, plaintiffs seek an award of $26,688.00, the total withdrawal liability

_____

[2]Citations to "Mem." refer to the Memorandum of Law in Support of Plaintiffs' Request for Damages at Inquest, filed with the Court on February 19, 2014.

[3]Exhibit B to plaintiffs' Memorandum of Law is a letter dated August 13, 2012, sent by certified mail to defendant Traymore, demanding payment of the withdrawal liability

amount owed, plus interest accrued on the first unpaid quarterly payment of $1,376.00, interest on the entire amount of withdrawal liability, liquidated damages, attorneys' fees and costs. (Compl. ¶¶ 18, 23).

## DISCUSSION

I. Default Judgment

    A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for entering a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. See id. Second, after the Clerk of the Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a referral to determine the question of damages. See Fed. R. Civ. P. 55(b). That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D.

4

Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an extreme remedy that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (ordering an inquest to determine damages and stating that where a court enters a default judgment, it is required to "supervise [that entry] . . . with extreme care to avoid [a] miscarriage[] of justice"). Accordingly, plaintiffs are not entitled to a default judgment as a matter of right, simply because the defendant is in default. Id.

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment. These factors include "'the amount of money potentially involved' (citation omitted)[,] . . . 'whether the grounds for default are clearly established,'" Hirsch v. Innovation Int'l, Inc., No. 91 Civ. 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (quoting Charles A. Wright, et al., 10 Fed. Practice & Procedure § 2685, at 425-26 (2d ed. 1983)), and whether the claims were adequately pleaded in the complaint, thereby placing the

5

defendant on notice. See Fed. R. Civ. P. 54(c) (stating that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); Charles A. Wright, et al., 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

### B. Entry of Default Judgment

In this case, it is beyond dispute that the defendant is in default since the defendant failed to file an answer to the Complaint, failed to oppose plaintiffs' motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's motion for a default judgement). Moreover, defendant has declined to obtain counsel, which constitutes a failure to defend because defendant, a corporation, cannot proceed pro se in federal court. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Given the numerous opportunities afforded defendant, and its apparent lack of interest in

6

participating in these proceedings, the Court finds no compelling reason to delay further in entering a default judgment. When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). The Court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

### C. Liability for ERISA Claims

Plaintiff asserts claims under Sections 4201 and 4203 of ERISA, and under Section 4301 of the MPPAA. Under Section 4201(a) of ERISA, an employer is required to pay withdrawal liability when the employer completely withdraws from participation in a Fund, within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1383. See 29 U.S.C. § 1381(a).

The MPPAA similarly provides that when an employer who is obligated to contribute to a multiemployer pension plan withdraws from the plan, the employer becomes obligated to pay its proportionate share of the plan's unfunded vested benefits. 29 U.S.C. § 1381(a); see Bowers v. Tranportacion Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990). Withdrawal liability is statutory, see Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., No. 09 CV 3068, 2011 WL 6130975, at *2 (E.D.N.Y. Nov. 10, 2011), report and recommendation adopted, 2011 WL 6131697 (E.D.N.Y. Dec. 8, 2011), and any determination of whether an employer has withdrawn and the determination of withdrawal liability is governed by ERISA. Id.

7

Upon an employer's withdrawal, the plan sponsor is required to notify the employer as to the amount of its withdrawal liability and demand payment in accordance with a schedule. Bowers v. Tranportacion Maritima Mexicana, S.A., 901 F.2d at 261; ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881 (2d Cir. 1988). The employer who wishes to dispute the amount of liability must request a review within 90 days of the demand and if not resolved, then arbitration is mandatory. Id. However, if no arbitration proceeding is initiated, the employer "waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability." Bakery & Confectionary Union & Industrial Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., 2011 WL 6130975, at *2 (citing Vacca v. Bridge Chrysler Jeep Dodge, Inc., No. 06 CV 3543, 2008 WL 4426875, at *8 (E.D.N.Y. Sept. 4, 2008)). The plan sponsor may then bring suit to collect the amounts owed. Id.

In addition to alleging claims under ERISA and the MPPAA, the Complaint alleges that defendant breached its obligation under the Fund's Withdrawal Liability Policy. (Compl. ¶ 19; Mem., Ex. A[4] § 10). Section 9 of the Fund's Withdrawal Liability Policy provides that all participating employers are required to pay withdrawal liability as determined by the Fund's Board of Trustees. (Mem., Ex. A § 9).

The facts as alleged in the Complaint are adequate to state claims under Sections 4201 and 4203 of ERISA, as well as claims under the MPPAA and a claim of breach of the Fund's Withdrawal Liability Policy. Specifically, plaintiffs allege that on or around February 28, 2011, defendant completely withdrew from participation in the Fund, within the meaning of Section

---

[4] Exhibit A to plaintiffs' Memorandum of Law consists of a copy of the Fund's Withdrawal Liability Procedures.

8

4203 of ERISA, 29 U.S.C. § 1383.  (Compl. ¶¶ 10-11).  As a result, plaintiff alleges that

defendant is required by Section 4201(a) of ERISA and by Section 4301 of the MPPAA to pay

withdrawal liability.  (Id.)  See 29 U.S.C. §§ 1381(a), 1451.

   According to plaintiffs, the Fund's actuary, Kenneth L. Friedman, determined that

defendant owed $26,688.00 in withdrawal liability.  (Mem., Ex. B).  The defendant failed to

make its first quarterly payment when it came due on October 12, 2012 in accordance with the

Fund's August 13, 2012 demand letter, and on October 17, 2012, the Fund gave defendant sixty

days notice in which to cure the default as required by ERISA.  (Compl. ¶¶ 11-15; Mem. at 3

(citing 29 U.S.C. § 1339(c)(5)(A))).  Although an employer has the right to initiate arbitration if

the employer disagrees with the Fund's assessment of the liability, no arbitration proceeding was

commenced by the defendant in this case.  (Compl. ¶¶ 12-13).

   In accordance with Section 4219(c)(5), an employer who fails to comply with its

obligations to pay withdrawal liability becomes liable for the full amount owed.  See Vacca v.

Bridge Chrysler Jeep Dodge, Inc., 2008 WL 4426875, at *7.  Section 4219(c)(5) provides as

follows: "In the event of a default, a plan sponsor may require immediate payment of the

outstanding amount of an employer's withdrawal liability, plus accrued interest on the total

outstanding liability from the due date of the first payment which was not timely made."  29

U.S.C. § 1399(c)(5).  Under Section 4301(b) of ERISA, a failure to make a withdrawal liability

payment is to be treated in the same way as a delinquent contribution within the meaning of

Section 515 of ERISA.  29 U.S.C. § 1451(b).  Section 515 provides that "every employer who is

obligated to make contributions to a multiemployer plan under the terms of the plan or under the

terms of a collectively bargained agreement shall . . . make such contributions in accordance with

9

the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Under Section 502(g)(2), where the employer fails to pay withdrawal liability, the employer is liable for interest, liquidated damages, and attorney's fees and costs. 29 U.S.C. § 1132(g)(2). Numerous courts have held that under ERISA, fiduciaries of covered funds have a duty to identify and collect delinquent contributions through an audit of the employer's books and records. See, e.g., New York State Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc., 92 F.3d 127, 130-32 (2d Cir. 1996) (holding that audits are "well within the scope of a trustee's common law fiduciary duties and powers"); Jaspan v. Glover Bottled Gas Corp., 80 F.3d 38, 41 (2d Cir. 1996) (holding that "fund trustees have a fundamental duty to locate and take control of fund property – a duty for which the right to audit is crucial"); see also Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 571-72 (1985) (stating that "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ."). Similarly, fiduciaries have a responsibility to collect withdrawal liability. 29 U.S.C. § 1382; see Board of Trustees of the Local 50 Pension Fund v. Krupp, No. 11 CV 5115, 2012 WL 4472019, at *2-3 (E.D.N.Y. Aug. 22, 2012).

Plaintiffs allege that defendant is bound by the terms of ERISA and the Withdrawal Liability Policy which require the Company to pay withdrawal liability. (Compl. ¶¶ 8, 19). Plaintiffs further allege that despite repeated demands, defendant Traymore has refused to make the requisite payments, despite notice and demand. (Id. ¶ 18).

Based on the undisputed allegations in the Complaint, plaintiffs have sufficiently alleged the elements necessary to establish that defendant breached its fiduciary duty under ERISA and the Fund's Withdrawal Liability Policy, directly and proximately resulting in a loss to the Funds.

10

II.  Damages

A.  Legal Standard

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on plaintiffs to establish their entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under

11

subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by
the defendant, and
(E) such other legal or equitable relief as the court deems
appropriate.

Id.; see also Iron Workers Dist. Council of W. New York and Vicinity Welfare & Pension Funds

v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).   In actions

seeking recovery for nonpayment of withdrawal liability, the Fund is entitled to receive not only

the total amount owed in withdrawal liability, absent any amounts paid, but it is also entitled to

receive interest, liquidated damages and reasonable attorneys' fees and costs.  See National

Integrated Group Pension Plan v. Dunhill Food Equip. Corp., 938 F. Supp. 2d. 361, 364

(E.D.N.Y. 2013).

In this case, the Court held an inquest on June 5, 2014.  The Court notes that it afforded

defendant an opportunity to submit documentation to help confirm the accuracy of plaintiffs'

claims for damages.  (See Inquest Order[5]).  Defendant failed to avail itself of this opportunity and

failed to appear for the inquest.  Accordingly, the Court has based its recommendations on a

thorough review of plaintiffs' submissions.

## B.  Withdrawal Liability

Under ERISA, an employer is required to pay withdrawal liability whenever the employer

withdraws from the fund.  Here, there is no dispute that Traymore became obligated to pay

withdrawal liability upon its withdrawal from the Fund in 2011.  Plaintiffs, through their

---

[5]Citations to "Inquest Order" refer to the Inquest Order issued by the Court on April 9,
2014.

attorneys, sent a Demand for Payment of Withdrawal Liability to defendant. (Compl. ¶ 11). The letter, dated August 13, 2012, indicates that, based on the Fund's calculations, defendant owed $26,688.00 in withdrawal liability as of February 28, 2011, the date of the complete withdrawal. (Id.) Actuaries for plaintiffs provided a description of the formula used to make this calculation, in accordance with the MPPAA and the Fund's Withdrawal Liability Policy, along with a worksheet setting forth the actual calculations. (Mem., Ex. B). The August 13 letter further advised that in accordance with the MPPAA and the Fund's Withdrawal Liability Policy, the employer was obligated to pay off the remainder, including interest, by making 23 quarterly payments of $1,376.00 and one final payment of $212.00. (Id.)

Having reviewed the plaintiffs' submissions and the actuaries' calculations, the Court finds that plaintiffs are entitled to an award of withdrawal liability in the total amount of $26,688.00, based on the calculations set forth in the actuaries' letter. Accordingly, the Court respectfully recommends that plaintiffs be awarded damages in the amount of $26,688.00.

C. Interest

Plaintiffs allege that Traymore is also liable for both the interest accrued on the entire $26,688.00 in withdrawal liability since the date the first quarterly payment became due, as well as the interest accrued on the first quarterly payment of $1,376.00 since it became due. Plaintiffs cite 29 C.F.R. § 4219.32(a) in support of their interest calculation, which provides that a plan sponsor of a multiemployer plan: "(1) Shall assess interest on overdue withdrawal liability payments from the due date . . . until the date paid . . .; *and* (2) In the event of a default, may assess interest on any accelerated portion of the outstanding withdrawal liability from the due

13

date . . . until the date paid . . . ." 29 C.F.R. § 4219.32(a) (emphasis added).

Plaintiffs read the subsections, joined by the conjunctive "and," to allow both the assessment of interest on the entire withdrawal liability amount and additional interest on the first missed quarterly payment. (Mem. at 5). Under their reading of the regulation, plaintiffs argue that they are entitled to first assess interest on the entire withdrawal liability, which includes the first quarterly payment amount, and then seek interest again, separately, on the first quarterly payment amount. Plaintiffs' interpretation essentially asks the Court to double count interest on the first quarterly payment amount.

The Court finds that plaintiffs' approach is inconsistent with a plain reading of the regulation and with recent interpretations of this provision by courts in this district. Section 4219 of ERISA provides that: "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Courts interpreting this provision in ERISA default cases have calculated interest only on the withdrawal liability amount, and have not included a separate calculation of additional interest for missed quarterly payments. See, e.g., Trustees of Local 813 Pension Trust Fund v. Canal Carting, Inc., No. 12 CV 60, 2014 WL 843244, at *14 (E.D.N.Y. Mar. 3, 2014) (interpreting 29 C.F.R. § 4219.32(a) to calculate accrued interest only on the amount of withdrawal liability); Board of Trustees of the Local 50 Pension Fund v. Krupp, No. 11 CV 5115, 2012 WL 4472019, at *3 (E.D.N.Y. Aug. 22, 2012) (noting that statutory interest is ordinarily awarded on "the total outstanding liability" from the first payment's due date, but declining to award interest for lack of sufficient supporting documentation), report and

recommendation adopted, 2012 WL 4472017 (E.D.N.Y. Sept. 26, 2012); Board of Trustees of the UFCW Local 174 Pension Fund v. Jerry WWHS Co., Inc., No. 08 CV 2325, 2009 WL 982424, at *4-5 (E.D.N.Y. Apr. 10, 2009) (holding that, in calculating interest, "[t]he principal amount is properly based on the amount of [defendant's] withdrawal liability"). Additionally, in Daniello v. PML Furniture Group of NJ, Limited, the Court directly considered the issue of double-counting quarterly payments in addition to the withdrawal liability, and held that this incorrectly overstated the amount of interest. No. 06 CV 5261, 2009 WL 4722650, at *5 (E.D.N.Y. Dec. 9, 2009).

This Court agrees with the decisions cited above in which the award of interest was limited to an award based on the entire withdrawal liability with no second award of interest based on the first missed payment. Indeed, the language of the C.F.R. provision does not expressly permit what is in essence an award of double interest under the circumstances presented in this case. The language of 29 C.F.R. § 4219.32(a)(1) is designed to allow a plan sponsor to recover interest accrued on a missed quarterly payment "until the date paid." This language covers the situation where the employer misses a particular payment but subsequently pays it late. In that instance, the interest would be calculated based on the period of time that the interim payment was outstanding. If, however, after curing the delinquency, the defendant subsequently defaulted altogether, then the obligation to pay any remainder of the withdrawal liability amount is accelerated under ERISA and interest would then accumulate on any remaining unpaid amounts from the date of the default. 29 C.F.R. § 4219.32(a)(2).

Here, defendant failed to make any payments whatsoever and the acceleration of the entire amount became due on the date of the default. Thus, pursuant to Section 4219(c)(5) of

15

ERISA, plaintiffs are entitled only to an award of the "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made" – in this case, $26,688.00. 29 U.S.C. § 1399(c)(5).

Under Section 1132(g)(2) of ERISA, the interest rate is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). In this case, pursuant to the MPPAA and the Withdrawal Liability Policy, the interest on late payments of withdrawal liability is to be calculated at the rate of 6.25%. (Mem. at 5-6, Exs. A, D). Plaintiffs' Memorandum of Law indicates that the amount of interest that has accrued at the rate of 6.25% between October 12, 2012 and May 2, 2014 is $4,569.86. (Mem. at 5). However, at the inquest hearing on June 5, 2014, plaintiffs' counsel represented that the amount of interest that has accrued at the rate of 6.25% between October 12, 2012 and May 2, 2014 is $2,591.11. (Inquest[6] at 6-7). This second value, offered at the inquest, is correct. It accurately reflects a calculation of interest from a daily rate of 0.01723%, derived from the 6.25% annual rate, over the 567 days passing between October 12, 2012 and May 2, 2014.

In addition, the Court has calculated that between May 3, 2014 and the date of this Report and Recommendation, interest has continued to accrue on the withdrawal delinquency at the rate of $4.57 per day. This accounts for an annual 6.25% interest rate, amortized over a 365-day year, for a daily interest rate of 0.017123%. In total, the Court has calculated additional interest that has accrued to the date of this Report and Recommendation as $246.77.

Having reviewed plaintiffs' calculations, the Court respectfully recommends that

---

[6]Citations to "Inquest" refer to the transcript of the Inquest Hearing held before Magistrate Judge Pollak at this Court on June 5, 2014.

16

plaintiffs be awarded a total amount of $2,837.88[7] in interest accrued since October 12, 2012 for

the unpaid withdrawal liability.  The Court further recommends that the plaintiffs be awarded any

interest that accrues from the date of this Report and Recommendation until the entry of

judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.


### D.  Liquidated Damages

Plaintiffs also request an award of liquidated damages in an amount equal to the interest

on the unpaid withdrawal liability in accordance with Section 502(g)(2) of ERISA.  See 29

U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages in "an amount equal to the

greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under

the plan in an amount not in excess of 20 percent . . .").

Based upon defendant's failure to remit the withdrawal liability payments to the Fund for

the relevant period, the Court respectfully recommends that plaintiffs be awarded liquidated

damages in the amount of $2,837.88, which is equal to the interest on the unpaid withdrawal

liability as of the date of this Report and Recommendation.


### E.  Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D), plaintiffs seek reasonable attorney's fees and

costs incurred in connection with this action.  Specifically, plaintiffs seek attorney's fees in the

amount of $4,634.10, representing services performed by plaintiffs' counsel beginning on

---

[7]This includes the $2,591.11 that accrued between October 12, 2012 and May 2, 2014,
plus the additional interest that has accrued since then.

February 5, 2013 and continuing until May 1, 2014, in connection with plaintiffs' efforts to obtain this judgment. (Amended Aff.[8], Ex. A).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report & recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report & recommendation adopted by 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended

---

[8]Citations to "Amended Aff." refer to the Amended Affirmation of Jorge A. Cisneros in Support of Plaintiffs' Claims for Attorneys' Fees, filed on May 2, 2014.

by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[9] 2012 WL 676350, at *5, n.8.

The burden is on the party moving for attorney's fees to justify the hourly rates sought.

---

[9]The Johnson factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

19

See Hensley v. Eckerhart, 461 U.S. at 437.  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "'[a] district court's choice of rates [is] well within [its] discretion'") (alteration in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994) (internal quotation marks omitted)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 866, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits . . . .'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).  Indeed, as the court in Simmons noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively." Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report and recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012).

In this case, plaintiffs were represented by Levy Ratner, P.C. (the "Firm"), which is

20

located at 80 Eighth Avenue, Eighth Floor, New York, New York 10011.  In accordance with

New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.

1983), the Firm submitted contemporaneous billing records, setting forth the dates and amount of

time during which services were rendered, the hourly rate at which the services were charged,

along with the name of the attorney and a description of services performed.  (Amended Aff., Ex.

A).

The requested attorney's fees represent:  1) 1.3 hours of legal work performed by Suzanne

Hepner, a partner at the Firm and the current chair of the Firm's Bankruptcy and Collections

Practice; 2) 14.1 hours of legal work performed by Jorge Cisneros, an associate at the Firm, who

graduated from law school in 2011 and has been practicing in the employee benefit field since

that time; 3) 0.8 hours of work performed by Sarah Sommers, a paralegal at the Firm; and 4) 3.9

hours of work performed by an unnamed paralegal law clerk.  (Id. at 3, Ex. A).

Based on the Court's knowledge of the rates generally charged in this district for this type

of work in connection with an ERISA default, the Court finds that the rates of $300 an hour for

Ms. Hepner's work and $276 per hour for Mr. Cisneros' work are reasonable in light of rates

commonly charged for this type of work in the Eastern District of New York.  See, e.g., Bakery

& Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co, Inc., 2011

WL 6130975, at *5 (finding a partner's hourly fee of $330 to be reasonable for ERISA

litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y.

Sept. 20, 2011), report and recommendation adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16,

2011) (approving rates of $390 per hour for work by partner and $280 per hour for work by

associate in ERISA litigation, including summary judgment motion); Finkel v. Fred Todino &

Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of

$370 per hour for partner and $275 per hour for associate in ERISA withdrawal liability case, but

noting that these rates were on the "higher end" for the Eastern District); Gesualdi v. MBM

Indus., Inc., No. 10 CV 2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a

partner's fee of $390 per hour and associate's fee of $280 per hour reasonable in ERISA

litigation); Finkel v. Architcraft Inc., No. 08 CV 4597, 2010 WL 1257773, at *3 (E.D.N.Y. Feb.

24, 2010) (finding a partner's hourly fee of $370 and associate's hourly fee of $275 per hour to

be reasonable in an ERISA action); Council of Carpenters Pension Fund v. Quantum Constr., No.

06 CV 13150, 2008 WL 5159777, at *13 (S.D.N.Y. June 19, 2008) (awarding $425 per hour for

partner time and $300 per hour for associate time upon entry of a default judgment in an ERISA

delinquent contribution case).

Hourly rates for paralegal assistants in the Eastern District range from $70 per hour to

$100 per hour. See Brady v. Wal-Mart Stores, Inc., No. 03 CV 3843, 2010 WL 4392566, at *5

(E.D.N.Y. Oct. 29, 2010). The average rate is $75 per hour. See Juarez v. Precision Apparel,

Inc., 2013 WL 5210142, at *14 (collecting Eastern District cases, and noting that $75 per hour is

most frequently awarded). Law clerks are generally awarded rates similar to those of paralegals.

See, e.g., Dajbabic v. Rick's Cafe, No. 12 CV 2808, 2014 WL 494895, at *2 (E.D.N.Y. Feb. 6,

2014) (reducing the hourly rate for a law clerk working before admission to the bar from $100 to

$75); Guardado v. Precision Financial, Inc., No. 04 CV 3309, 2008 WL 822105, at *4-5

(E.D.N.Y. Mar. 25, 2008) (reducing the rate for a legal intern "awaiting admission to the bar"

from $185 per hour to $75 per hour). Given that the rates generally charged in this district are

closer to the average of $75 per hour, the Court respectfully recommends that the requested rates

22

for paralegal and law clerk services be reduced to $75 per hour.

Accordingly, the Court respectfully recommends that Ms. Hepner's time be calculated using the $300 per hour rate, Mr. Cisneros' time be calculated at the rate of $276 per hour, and the law clerk and paralegal's time be calculated at the rate of $75 per hour.

Having determined the rates to be charged in this case, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., 2009 WL 240521, at *4. If the number of hours billed is determined to be unreasonable, the court may exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Based on the contemporaneous billing records submitted to the Court, the Firm seeks compensation for a total of 20.1 hours of work on this matter from February 5, 2013 through May 1, 2014. (Amended Aff., Ex. A). The Firm's work on this case included drafting the Complaint, drafting plaintiff's Motion for a Default Judgment and the materials annexed thereto, drafting the Memorandum of Law and the materials annexed thereto, and drafting the Amended Affirmation. Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is reasonable given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim.

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $4,634.10 in attorney's fees.

23

Plaintiffs also request $570 in costs, which consists of a $400 cost for filing the Complaint, and $170 for service of the Complaint. (Amended Aff. at 4). Under Section 502(g)(2)(D) of ERISA, plaintiffs are entitled to recover reasonable costs. See 29 U.S.C. § 1132(g)(2)(D). Filing fees and service of process fees are specifically included in the statute, and therefore, plaintiffs here may recover them. See 28 U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d. 277, 290 (awarding $818.53 in costs for filing fees, service, postage, and photocopying). Accordingly, based on a review of the record, the Court finds the requested costs to be reasonable, and respectfully recommends that plaintiff be awarded $570 in costs.

## CONCLUSION

In summary, the Court respectfully recommends that plaintiff's motion for a default judgement be granted and that plaintiff be awarded $37,567.86, consisting of the following damages from defendant: 1) $26,688.00 in unpaid withdrawal liability; 2) $2,837.88 in interest on the unpaid amount to the date of this Report and Recommendation; 3) $2,837.88 in liquidated damages, as of the date of this Report and Recommendation; 4) $4,634.10 in attorney's fees; and 5) $570 in costs, plus any additional interest that accrues from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health &

Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      June 25, 2014

                                      Cheryl L. Pollak
                                      United States Magistrate Judge
                                      Eastern District of New York

25